**SO ORDERED.**

**SIGNED August 7, 2013.**



_____
**ROBERT SUMMERHAYS**
**UNITED STATES BANKRUPTCY JUDGE**
_____

```
            UNITED STATES BANKRUPTCY COURT
             WESTERN DISTRICT OF LOUISIANA
                  ALEXANDRIA DIVISION

IN RE:

CENTRAL LOUISIANA GRAIN
COOPERATIVE, INC.,                      CASE NO. 08-80475

     Debtor                             Chapter 7
------------------------------------------------------------
THOMAS R. WILLSON, TRUSTEE,

     Plaintiff

VERSUS                                  ADVERSARY NO. 08-8016

MCPHERSONS PARTNERSHIP,

     Defendant
------------------------------------------------------------
                     REASONS FOR DECISION
------------------------------------------------------------
```

The present matter before the court is a motion for summary judgment filed by Thomas R. Willson, the duly appointed Chapter 7 trustee for Central Louisiana Grain Cooperative, Inc. (the "Trustee") against McPhersons Partnership ("McPhersons"). The

Trustee moves for summary judgment with respect to his avoidance claims under 11 U.S.C. § 547(b), 544, and 548, as well as the affirmative defenses asserted by McPhersons. The court took the matter under advisement following oral argument. After considering the summary judgment record, the parties' arguments, and the relevant authorities, the court rules as follows.

**JURISDICTION**

This case has been referred to this court by the Standing Order of Reference entered in this district which is set forth as Rule 83.4.1 of the Local Rules of the United States District Court for the Western District of Louisiana. No party in interest has requested a withdrawal of the reference. The court finds that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). Moreover, the court may enter final orders on the claims and defenses asserted in this case under Stern v. Marshall, ___U.S. ___, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011). See First Choice Drywall, Inc. v. Presbitero (In re First Choice Drywall, Inc.), 2012 WL 4471570 (Bankr. N.D. Ill. Sept. 25, 2012)(bankruptcy court has the power to determine preference actions after Stern ); Olsen v. PG Design/Build, Inc. (In re Smeltzer Plumbing Sys., Inc.), 2011 WL 6176213 (Bankr. N.D. Ill. Dec. 12, 2011)(same); Nanodynamics, Inc. v. Rothstein (In re Nanodynamics, Inc.), 474 B.R. 422, 429 (Bankr. W.D.N.Y. 2012) (same); Appalachian Fuels, LLC v. Energy Coal

-2-

Resources, Inc. (In re Appalachian Fuels, LLC), 472 B.R. 731, 744 (E.D. Ky. 2012) (same); In re Am. Hous. Found., 469 B.R. 257, 265 (Bankr. N.D. Tex. 2012) (same); In re DBSI, Inc., 467 B.R. 767, 773 (Bankr. D. Del. 2012) (same); West v. Freedom Medical, Inc. (In re Apex Long Term Acute Care-Katy, LP.), 465 B.R. 452, 463 (Bankr. S.D. Tex. 2011) (same); Burtch v. Huston (In re USDigital, Inc.), 461 B.R. 276, 285 (Bankr. D. Del. 2011) (same).

## BACKGROUND

The debtor is a Louisiana agricultural cooperative association formed under La. R.S. 3:17 *et seq*. The debtor typically entered into grain contracts with its farmer members. McPhersons, which is not a member of the debtor, entered into a grain purchase agreement with the debtor in 2008 and shipped 39 loads of soybeans to Zen-noh Grain Elevator in Convent, Louisiana pursuant to that agreement from January 8, 2008 through February 13, 2008. The debtor issued a check to Mcphersons for $541,096.91 on February 29, 2008. That check was subsequently dishonored. On March 12, 2008, McPhersons filed a statement of privilege that was recorded in the mortgage records of Rapides Parish, Louisiana. McPhersons also filed a lis pendens on March 24, 2008.

The debtor filed for relief under Chapter 7 on April 10, 2008. The Trustee subsequently commenced the present action seeking to avoid McPhersons' statutory lien. The Trustee asserts claims under

-3-

11 U.S.C. §§ 547, 548 and 544.  The Trustee seeks summary judgment on these claims and McPhersons' statutory lien, ordinary course, and contemporaneous exchange defenses.

**DISCUSSION**

**A.  Summary Judgment Standard.**

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P 56(a).  The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.  See Matsushita Electric Industries v. Zenith Radio Corp. 475 U.S. 574, 587 (1986).  Summary judgment procedure is designed to isolate and dispose of factually unsupported claims or defenses. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses.  To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.  See Calderone v. United States, 799 F. 2d 254, 259 (6th Cir. 1986).  To avoid summary judgment, the non-movant must

-4-

then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims. <u>Celotex Corp.</u>, 477 U.S. at 324-326. If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims. <u>Id</u>. Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor. <u>See</u> <u>Anderson v. Liberty Lobby, Inc</u>., 477 U.S. 242, 249-252 (1986). Under this standard, the non-movant cannot rely on unsupported assertions or arguments, but must submit sufficiently probative evidence supporting its claims or defenses. Even if the burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment. <u>Celotex Corp</u>., 477 U.S. at 330-331.

-5-

08-08016 - #106  File 08/07/13  Enter 08/08/13 12:08:08  Main Document  Pg 5 of 16

**B. The Trustee's Preference Claim.**

The Trustee has the burden of persuasion at trial with respect to each of the elements of a preference claim under 11 U.S.C. § 547(b). Accordingly, in order to prevail on summary judgment, the Trustee must establish that there is no genuine dispute of material fact with respect to each element of his preference claim, and that he is entitled to judgment as a matter of law. Section 547(b) provides that a trustee may avoid any transfer of an interest of the debtor in property:

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made–

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if–

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of

-6-

08-08016 - #106  File 08/07/13  Enter 08/08/13 12:08:08  Main Document  Pg 6 of 16

such debt to the extent provided by
the provisions of this title.

11 U.S.C. § 547(b)

The undisputed facts establish each of the elements of the Trustee's preference claim as a matter of law. The creation of McPhersons' privilege was a "transfer of an interest of the debtor in property." 11 U.S.C. § 101(54) (defining "transfer" to include "the creation of a lien."); see also In re Brown, 375 B.R. 348 (Bankr. E.D. Tex. 2007); Superior Bank, FSB v. Boyd (In re Lewis), 398 F.3d 735, 746 (6th Cir. 2005)(creation of a lien is a transfer within the meaning of section 547(b)).[1] The privilege arose on account of an antecedent debt owed by the debtor. Specifically, McPherson delivered thirty-nine loads of soybeans as part of a grain purchase agreement with the debtor. The debtor was, therefore, obligated to pay McPhersons approximately $541,096. The debtor was presumed to be insolvent at the time of the transfer. 11 U.S.C. § 547(f). There is no dispute that the creation of McPhersons' privilege occurred within the 90-day period prior to bankruptcy. Finally, McPhersons' privilege would allow it to receive more than it would receive without the privilege because it

---

[1] A "transfer" includes both "voluntary and involuntary" transfers of an interest in the debtor's property through "the creation of a lien." In re Bay Area Glass, Inc., 454 B.R. 86, 89 (9th Cir. BAP 2011).

-7-

would otherwise be treated as an unsecured creditor. (Affidavit of Thomas R. Willson at ¶11 [Dkt. No. 89]).

In sum, the Trustee has established that there is no genuine dispute of material fact with respect to each of the essential elements of his preference claim under section 547(b).

**C.  The Fixing of a Statutory Lien.**

McPhersons contends that even if the Trustee satisfies the *prima facie* elements of a section 547(b) claim, its privilege is not avoidable under 11 U.S.C. § 547(c)(6).  Section 546(c)(6) provides that a trustee "may not avoid under this section a transfer ... that is the fixing of a statutory lien that is not avoidable under section 545 of this title."  The Code's definition of a "statutory lien" includes a "lien arising solely by force of a statute on specified circumstances or conditions." 11. U.S.C. § 101(53).  McPherson contends that its privilege under La. R.S. 9:5021 satisfies this definition and that the fixing of this privilege is not subject to avoidance under section 547(c)(6). La. R.S. 9:5021 provides that :

> When any corporation formed under the provisions of the laws of the State of Louisiana, or any corporation doing business in this state, or any partnership, firm or individual doing business in this state, **becomes insolvent or bankrupt**, the producers of agricultural and dairy products, including cooperative marketing associations of such producers, shall have a special privilege upon

-8-

> the assets, whether immovable, movable, or mixed, of such corporation, partnership, firm or individual for the amount of payments for agricultural and dairy products due them ...

(emphasis added)  Because this privilege arises by statute upon "specified circumstances or conditions" – insolvency or bankruptcy – it satisfies the definition of a statutory lien under section 101(53). However, the fact that the privilege is triggered by insolvency or bankruptcy creates a problem for McPhersons with respect to the requirement of section 547(c)(6) that the lien not be avoidable under 11 U.S.C. § 545.  Sections 545(1)(A) and (1)(D) provide that a trustee may avoid a statutory lien that "first becomes effective against the debtor ... when a case under this title concerning the debtor is commenced" or  "when the debtor becomes insolvent."  The lien defined by La. R.S. 9:5021 (and claimed by McPhersons) falls squarely within sections 545(1)(A) and (1)(D) because it does not arise until a debtor files bankruptcy or becomes insolvent.

In sum, the safe harbor of section 547(c)(6) is inapplicable as a matter of law to McPherson's privilege under La. R.S. 9:5021. The Trustee is therefore entitled to summary judgment on this defense.

**D.  The Ordinary Course Defense.**

The Trustee also challenges McPherson's "ordinary course" defense under 11 U.S.C. § 547(c)(2).  Section 547(c)(2) provides

-9-

that an otherwise avoidable transfer is not subject to avoidance:

> to the extent that such transfer was in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee, and such transfer was–
>
> (A) made in the ordinary course of business or financial affairs of the debtor and the transferee; or
>
> (B) made according to ordinary business terms ....

11 U.S.C. § 547(c)(2). The ordinary course exception is an affirmative defense, so McPhersons has the burden of persuasion as to each element of the defense. In re Gulf City Seafoods, 296 F.3d 363, 368 n.5 (5th Cir. 2002). The Trustee's challenge centers on the requirements of section 547(c)(2)(A) and (B): whether the transfers were made in the ordinary course of both parties (which is a subjective inquiry) or whether the transfers were made according to ordinary business terms as reflected in the relevant industry (which is an objective inquiry). In re SGM Acquisition Co. LLC, 439 F3d 233, 239 (5th Cir. 2006).

The subjective prong of the ordinary course defense requires a fact-specific examination of the parties' conduct to determine "whether the transactions between the debtor and the creditor before and during the ninety-day period are consistent." Lightfoot v. Amelia Maritime Services, Inc., (In re Seabridge Marine, Inc.),

-10-

412 B.R. 868, 872 (Bankr. E.D. La. 2008). The factors that courts consider include (1) the time period over which the parties engaged in similar transactions, (2) whether the amount or form of payment differ from past practices, (3) the presence of any unusual collection activity, and (4) whether the creditor took actions that gained it an advantage over other creditors in light of the debtor's deteriorating financial condition. See Kleven v. Household Bank F.S.B., 334 F. 3d 638, 642 (7th Cir. 2003); In re Quad Systems Corp., 2003 WL 25947345 at *5 (Bankr. E.D. Pa. 2003). A creditor typically addresses these factors by establishing a "baseline of dealing" as far as the parties' past billing, payment, and collection practices. In re Accessair, Inc., 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). A creditor must establish that the challenged transfer occurring during the preference period falls within the normal pattern of payment practices between the parties during the pre-preference period. Id.

The objective prong of section 547(c)(2) requires the creditor to show that the challenged transfers were consistent with the relevant industry standard. In order to satisfy this burden, courts require creditors to offer evidence of payment practices between other creditors and debtors in the relevant industry. In

-11-

re Gulf City Seafoods, Inc., 296 F. 3d at 369 ("In our view, for an industry standard to be useful as a rough benchmark, the creditor should provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product."). This standard cannot be satisfied by proof of the creditor's own dealings with the debtor or other parties, but "requires reference to some external data" involving other creditors and debtors in the relevant industry. In re Merry-go-round Enterprises, Inc., 272 B.R. 140, 147 (Bankr. D. Md. 2000); In re Roblin Industries, Inc., 78 F. 3d 30, 43 (2d Cir. 1996) (creditor did not sustain its burden of proof at trial because it did not produce evidence of industry practice or custom apart from the creditor's own experience).

The Trustee contends that McPhersons cannot satisfy its burden under either the subjective or objective prong of section 547(c)(2). According to the Trustee, it is undisputed that the purchase agreement between the debtor and McPhersons was the first and only transaction between the parties, and that there is no baseline of regular, recurring transactions between the parties before the preference period. Thus, according to the Trustee, McPhersons cannot show that the challenged transfer was made in the ordinary course of the parties' dealings. Moreover, the transfer at issue was not the issuance of the $541,096 check – the check was

-12-

dishonored and no property was transferred – but the creation of a privilege under La. R.S. 9:5021 triggered by the debtors' insolvency or bankruptcy. The Trustee argues that the creation of this privilege cannot, by definition, be a transfer made in the ordinary course because it was only triggered by extraordinary events. In light of the Trustee's showing, McPhersons must come forward with summary judgment evidence demonstrating the existence of a genuine dispute of material fact with respect to either prong of section 547(c)(2). McPhersons responds with an affidavit stating that it was "the usual and customary practice of McPhersons Partnership to obtain payment for deliveries of commodities once all deliveries have been completed" and that "the delivery of the check and the filing of the lien were done within the usual and customary practice of McPhersons Partnership." (Affidavit of Jon McPherson, attached to McPhersons' Memorandum in Opposition to Motion for Summary Judgment).

Considering the summary judgment record as a whole, the court concludes that McPhersons has not met its summary judgment burden. McPhersons concedes that there is no history or baseline of dealings between the parties. McPhersons' summary judgment evidence only addresses – in a conclusory fashion – what was in the ordinary course for *McPhersons* in isolation from its dealings with the debtor. This evidence is insufficient to support an ordinary

-13-

course defense. See In re Accessair, 314 B.R. 386, 393 (8th Cir. BAP 2004) (creditor had "the burden of establishing some baseline of dealings between the parties prior to the preference period"). The fact that a challenged transaction is the only transaction between the parties is not fatal to an ordinary course defense. However, where there is no history of prior dealings between the parties, the defendant must establish that the challenged transfer was consistent with an agreement (written or oral) between the parties. See In re Klevin, 334 F.3d 638, 642-43 (7th Cir. 2003). Here, McPhersons has made no such showing. Nor does McPherson address how the creation of a privilege triggered by extraordinary events – the insolvency/bankruptcy of the debtor – can qualify as a transfer made in the ordinary course. Finally, McPhersons offers no evidence with respect to the objective prong of the defense. See In re Gulf City Seafoods, Inc., 296 F.3d 363, 369 (5th Cir. 2002) ("In our view, for an industry standard to be useful as a rough benchmark, the creditor should provide evidence of credit arrangements of other debtors and creditors in a similar market, preferably both geographic and product."). The court, therefore, grants the Trustee summary judgment with respect to McPhersons' ordinary course defense.

**D.     The Contemporaneous Exchange Defense.**

Finally, the Trustee challenges McPhersons' "contemporaneous exchange" defense under 11 U.S. § 547(c)(1). Section 547(c)(1)

-14-

provides:

> the trustee may not avoid under this section a transfer...
>
> (1) to the extent such transfer was –
>
> > (A) intended by the debtor and the creditor to or for whose benefit such transfer was made to be a contemporaneous exchange for new value given to the debtor;
> >
> > (B) in fact a substantially contemporaneous exchange...

11 U.S.C. § 547(c)(1). The Trustee contends that a privilege triggered by the debtor's insolvency or bankruptcy cannot satisfy these requirements. McPhersons' response offers little to address the Trustee's arguments. By definition, a privilege triggered by the debtor's insolvency or bankruptcy could not have been "intended by the debtor and [McPhersons]...to be a contemporaneous exchange for new value" which, here, is represented by shipments of soybeans from January 8, 2008, through February 13, 2008. McPhersons summary judgment response offers nothing to support the existence of a genuine dispute of material fact with respect to this element of its defense. Accordingly, the court grants the Trustee summary judgment with respect to McPhersons' contemporaneous exchange defense.

-15-

**E.   The Trustee's Section 544 and 548 Claims.**

The Trustee also moves for summary judgment on his section 544 and 548 claims. In light of the court's ruling on the Trustee's section 547 claim, the court need not address these alternative claims.

### CONCLUSION

For the foregoing reasons, the court **GRANTS** the Trustee summary judgment with respect to the elements of his section 547(b) preference claim and the affirmative defenses identified herein. In all other respects, the Trustee's motion is **DENIED**. The Trustee shall prepare and submit a judgment that reflects the court's ruling herein.

###

08-08016 - #106  File 08/07/13  Enter 08/08/13 12:08:08  Main Document  Pg 16 of 16